JOEL ROSENBAUM and ELSIE ROSENBAUM, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Rosenbaum v. Commissioner
Docket Nos. 4757-70, 4758-70, 4759-70.
United States Tax Court
T.C. Memo 1973-76; 1973 Tax Ct. Memo LEXIS 211; 32 T.C.M. (CCH) 346; T.C.M. (RIA) 73076; April 2, 1973, Filed *211 Held, the dominant motivation of employee/stockholders in making loans to and guaranteeing obligations of their corporation was to protect their investments in the corporation; losses suffered by them in connection with said loans and guarantees therefore resulted from nonbusiness bad debts, deductible only as short-term capital losses under sec. 166(d) of the 1954 Code. United States v. Generes, 405 U.S. 93 (1972). Joel Rosenbaum, Benjamin D. Rosenbaum and Ezra Rosenbaum, pro se. William M. Gross, for the respondent. *212 2 HOYT
MEMORANDUM FINDINGS OF FACT AND OPINION HOYT, Judge: The respondent determined deficiencies in the petitioners' income tax for the calendar years and in the amounts listed below: Docket No.
Year
Deficiency 4757-70
1965
$658.23
1966
651.54
4758-70
1965
590.67
1966
432.24
1967
698.39
4759-70
1965
297.35
1966
451.19
Several issues having been conceded, [2] the question remaining for our consideration is (a) whether the petitioners' dominant motivation in making loans to or guaranteeing obligations of Brothers Chemical Company was to protect their salary income so that losses suffered when the corporation was adjudicated bankrupt in 1965 were deductible as business bad debts under section 166(a) of 1954 Code, or (b) whether their dominant motivation was to protect their investment in the corporation so that the losses suffered were deductible as nonbusiness bad debts under section 166(d) of the 1954 Code. 3 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation *213 of facts and exhibits thereto are incorporated herein by this reference. The petitioners in Docket No. 4757-70 are Joel Rosenbaum and Elsie Rosenbaum, husband and wife. At the time their petition was filed herein, they resided in Morristown, New Jersey. The petitioners in Docket No. 4758-70 are Benjamin D. Rosenbaum and Ann Rosenbaum, husband and wife. At the time their petition was filed herein, they resided in Verona, New Jersey. The petitioners in Docket No. 4759-70 are Ezra Rosenbaum and Marcella Rosenbaum, husband and wife. At the time their petition was filed herein, they resided in Bernardsville, New Jersey. The petitioners filed joint, cash basis income tax returns for the taxable years in issue. Joel, Benjamin, and Ezra Rosenbaum are brothers. Their wives are parties only because joint returns were filed. The three brothers are sometimes referred to herein as the petitioners. 4 At all times during the years at issue, the brothers were stockholders and officers of Brothers Chemical Company, a New Jersey corporation which manufactured high purity chemicals and devices to detect poisonous gases, liquids, and solids. Brothers Chemical Company was organized *214 in 1948, and, after a public offering in 1961 (and at all times material hereto), each of the brothers owned approximately 13 percent of the outstanding stock of the corporation. The remaining stock was owned by approximately 900 other shareholders. Each brother had a cost basis in his stock of approximately $84,585.89, resulting from the capitalization of a series of loans the brothers made to the corporation between 1948 and 1961. From 1937 until the organization of Brothers Chemical Company in 1948, the petitioners held responsible positions with Paragon Testing Laboratories, a manufacture of laboratory chemicals. Joel was President of Paragon and is a graduate chemical engineer. As an army officer during World War II, he was in charge of a large segment of the chemical industry and all of the food and pharmaceutical industries of Italy for the Allied Control Commission. He had charge of sales and overall policy for 5 Brothers Chemical Company. Ezra is a graduate chemist with a Master of Science degree. He had charge of the scientific activities of Brothers Chemical Company, including research, production, and quality control. Benjamin was in charge of purchasing, inventory *215 control, and administrative procedures. Both Ezra and Benjamin had held similar positions with Paragon Testing Laboratories. Subsequent to 1961, each of the brothers made loans to Brothers Chemical Company and, in addition, guaranteed certain other obligations of the corporation. There were several transactions in all, and according to schedules attached to petitioners' income tax returns substantial losses arose from loans made in 1964 and 1965. The largest single transaction listed was a loan of $14,984 made on February 5, 1965, according to these schedules. Brothers Chemical Company was adjudicated bankrupt on August 17, 1965, and as a result each brother incurred a loss in that year in connection with the aforementioned loans and guarantees. Although the amount of loss claimed by each brother was $33,677 on his respective 1965 tax return, the parties have stipulated that the amount of each brother's loss was $21,577. 6 As executives of Brothers Chemical Company, the brothers were paid salaries as follows: Year
Joel
Benjamin
Ezra 1961
$15,000
$15,000
$15,000.00
1962
11,900
11,900
11,900.00
1963
15,600
15,600
15,600.00
1964
9,832
9,844
10,021.30
*216 These salaries were the only salaries that each brother received during the years listed above. The record does not disclose the amount of salaries paid to petitioners by Brothers Chemical Company in 1965, if any. In his statutory notices to the petitioners, dated April 20, 1970, the respondent determined, relative to the taxable year 1965, that each petitioner was not entitled to deduct the loss in question as a business bad debt but rather as a short-term capital loss, and the respondent determined, relative to the subsequent years, that the loss must be carried forward as a capital rather than as an ordinary loss. [3] 7 ULTIMATE FINDING OF FACT The petitioners' dominant motivation in making loans to or guaranteeing obligations of Brothers Chemical Company was to protect their investments in the corporation and not to protect and assure their *217 continued salary from the corporation. OPINION The petitioners were employees and stockholders of Brothers Chemical Company. They incurred bad debt losses during the taxable year 1965 resulting from loans which they had made to the corporation and from the payment of corporate obligations which they had guaranteed. Each of the petitioners claimed an ordinary loss in the amount of $33,677 in his return for the taxable year 1965. The parties have stipulated, however, that the actual amount of the loss in each case was $21,577. The respondent has not allowed the deduction of these losses as ordinary losses under section 166(a) [4] of the 1954 Code. Instead he determined and argues 8 that the losses in question resulted from nonbusiness bad debts and are therefore deductible only as a short-term capital losses under section 166(d) [5] of the 1954 Code. The petitioners urge that the losses fall within the scope of Section 166(a). *218 9 the losses. The sole issue for our determination, therefore, is whether the brothers' dominant motivation was the protection of their salary income, as the petitioners contend, or whether it was the protection of their investment, as the respondent contends. The recent decision of the Supreme Court in United States v. Generes, 405 U.S. 93 (1972), is on point. There, the Court explained the dual status that a shareholder/employee has relative to his corporation for purposes of section 166. The Court said: In Tax jargon, Generes' status as a shareholder was a nonbusiness interest. It was capital in nature and it was comprised initially of tax-paid dollars. Its rewards were expectative and would flow not from personal effort, but from investment earnings and appreciation. On the other hand, Generes' status as an employee was a business interest. Its nature centered in personal effort and labor, and salary for that endeavor would be received. The salary would consist of pre-tax dollars. Thus, for tax purposes it becomes important and, indeed, necessary to determine the character of the debt that went bad and became uncollectible. Did the debt center on *219 the taxpayer's business interest in the corporation or on his nonbusiness interest? * * * [405 U.S. at 100-101] 10 In making this determination, the regulations require an examination of "the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer." Section 1.116-5(b) (2), Income Tax Regs. The regulations take the position that a loss is not a nonbusiness loss "if that relation is a proximate one in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless * * *." Ibid. Commenting on these regulatory provisions the Supreme Court in Generes concluded - that in determining whether a bad debt has a "proximate" relation to the taxpayer's trade or business, as the Regulations specify, and thus qualifies as a business bad debt, the proper measure is that of dominant motivation, and that only significant motivation is not sufficient. * * * [405 U.S. at 103] As in the instant case, the taxpayer in Generes was a salaried employee who loaned money to his corporation (in addition to idemnifying a surety of the corporation when the corporation *220 defaulted on certain contracts). The corporation subsequently went into receivership, and the taxpayer was unable to obtain reimbursement from it. In attempting to ascertain the taxpayer's dominant motivation, 11 the High Court stated: [An] employee-shareholder, in making or guaranteeing a loan to his corporation, usually acts with two motivations, the one to protect his investment and the other to protect his employment. By making the dominant motivation the measure, the logical tax consequence ensues and prevents the mere presence of a business motive, however small and however insignificant, from controlling the tax result at the taxpayer's convenience. * * * [405 U.S. at 104] The Supreme Court concluded that the taxpayer in United States v. Generes did not have "a dominant motivation directed to the preservation of the taxpayer's salary as president" of the corporation, and the deduction was denied under section 166(a). The Court based its decision on the following factors: [6]
1. The only real evidence offered by the taxpayer was his own testimony that he acted to protect *221 his job. This testimony was self-serving. 2. The taxpayer's testimony did not stand up to analysis. Reasonable minds could not believe that the protection of the $12,000 annual salary facts that: a. the taxpayer's original investment in the corporation was $38,900, and the $12,000 salary after his original (tax paid) investment; 12 b. the taxpayer had made loans to the corporation; and c. the taxpayer had a personal interest in the integrity of the corporation as a source of living for his son-in-law and as an investment for his son and another son-in-law. The present case is on much the same footing as the Generes case. The only evidence offered to the Court by the petitioners on the question of motivation was self-serving testimony. The petitioners were familiar with the Supreme Court opinion in Generes, and the testimony offered followed the language in that opinion. Standing by itself, such testimony was not convincing. Furthermore, each brother had a cost basis in his stock of approximately $84,585.89, resulting from the capitalization of a series of loans made to the corporation between 1948 and 1961. In view of this fact, it strains one's credulity *222 to believe that the loans and guarantees were made largely for the purpose of assuring at most a $15,000 annual salary (reduced by the applicable income tax). [7] It is only reasonable to 13 conclude that the loans and guarantees were made primarily to protect their investments. We regard it as unlikely that experienced businessmen could give only "incidental" consideration to the protection of a business which they had founded and to which they had devoted 13 years of effort and considerable resources. We believe it is significant to note that the petitioners' investments in the corporation were derived from the capitalization of a series of loans to the company over a period of years. Nothing in the record suggests that the loans and guarantees at issue were materially different in nature from the *223 prior loans, which the brothers regularly made to enhance their capital investment. The petitioners maintain that at least one of the loans was negotiated to provide "cash flow" to facilitate payment of the officers' salaries. However, no accounting data or other material to support this position was placed in evidence by them. The petitioners also argue that it would have been difficult for the brothers to obtain other employment. We think it is a fair inference from 14 the record that their earning potential in their professional occupations was at least as great as it was with Brothers Chemical Company. This factor further limits the acceptability of a claimed salary protection motive. We conclude and hold that the petitioners' dominant motivation in making loans to or guaranteeing obligations of Brothers Chemical Company was to protect their investments in the corporation and that the protection of their income from salaries was only an incidental motivation. Accordingly, we hold that the losses suffered by the petitioners in connection with said loans and guarantees resulted from nonbusiness bad debts and are therefore deductible only as short-term capital losses *224 under section 166(d) of the 1954 Code as determined by the respondent. Because of the concessions made by the parties, Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Benjamin D. Rosenbaum and Ann Rosenbaum, Docket No. 4758-70, and Ezra Rosenbaum and Marcella Rosenbaum, Docket No. 4759-70. ↩
2. The calculation of medical expense deductions will be accomplished in the Rule 50 computation. ↩
3. The parties have agreed that in the event the Court rules that the bad debt may be deducted as an ordinary loss (i.e., as a business bad debt under section 166(a) of the 1954 Code), then the excess over the amount utilized in 1965 will be absorbed through carrybacks in prior years where refund claims are now pending. ↩
4. SEC. 166. BAD DEBTS. (a) General Rul. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
5. SEC. 166. BAD DEBTS * * * (d) Non business Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
6. The listing which follows is a paraphrase of the Court's opinion. ↩
7. As our findings of fact reflect, petitioners each received a salary of only $11,900 in 1962 which dropped to approximately $10,000 in 1964. They have not established how much of the stipulated loss for 1965, $21,577, was due to loans or guarantees made in 1964 and 1965, but their returns claimed losses of $16,437 from loans to Brothers Chemical Company in those years. ↩